EDGAR L. GARDENIER, Plaintiff, *v.* JOHN V. SCRIPTER and Others,
Defendants.

County Court, Oswego County, April 3, 1925.

Mortgages — foreclosure — action instituted in County Court — no bond
given with mortgage — County Court has jurisdiction under Civil
Practice Act, §§ 69 and 74, to pass on defense that mortgagors were not
to be personally liable — evidence — conversations between parties prior
to execution of mortgage admissible to show intention — evidence
shows it was intention of parties that mortgagors were not to be
personally liable — plaintiff not entitled to deficiency judgment.

A County Court has jurisdiction under sections 69 and 74 of the Civil Practice
Act, in an action instituted by a mortgagee to foreclose a mortgage, to determine
a defense that the parties to the mortgage agreed prior to the execution thereof
that the mortgagors would not be personally liable and that the mortgagee
would look exclusively to the land as security for the payment of the debt.

Evidence of conversations between the parties prior to the execution of the
mortgage is admissible for the purpose of showing that it was the intention of
the parties that the mortgagors were not to be personally liable for the debt
secured by the mortgage.

The evidence establishes that the parties agreed prior to the execution of the
mortgage that the mortgagors were not to be personally liable for the debt
secured thereby and this intention is fortified by the fact that no bond was
given with the mortgage and that wherever the word "bond" appeared in
the mortgage it was stricken out.

The plaintiff is not, therefore, entitled to a deficiency judgment.

THIS is an action in the usual form to foreclose a mortgage, and
the judgment prayed for is the usual judgment of foreclosure,
including a judgment of deficiency, if any, against the defendants.
The defendants John V. Scripter and Ethol E. Scripter have
answered and allege that the giving of the mortgage in question
involved them in no personal liability to pay, but concede plaintiff's
right to the judgment of foreclosure and sale, without a deficiency
of personal judgment against them.

*D. P. Morehouse,* for the plaintiff.

*Udelle Bartlett,* for the defendants John V. Scripter and another.

CULKIN, J.:

The plaintiff brings this action to foreclose the mortgage on
premises in the town of Hannibal, county of Oswego, N. Y., and
asks for the usual judgment of foreclosure and sale and for judgment
for deficiency against all the defendants.

The defendants John V. Scripter and Ethol E. Scripter, who on
or about the 30th day of March, 1920, executed the mortgage in
question to the plaintiff, appeared by attorney and in answering

the complaint allege that the execution of the mortgage in question was done pursuant to an agreement that the plaintiff should look solely and rely solely upon the land covered by the mortgage as security for the payment of the mortgage debt, and not to any personal liability on the part of the defendants. The issue in this action, therefore, is whether or not, under the mortgage in question, plaintiff is entitled to a deficiency judgment against the said John V. Scripter and Ethol E. Scripter.

The plaintiff raises a jurisdictional question, to wit, that the issue joined by the pleadings cannot be adjudicated in County Court, because this court " is without jurisdiction to reform the instrument in question, and that until the contract is so reformed in Supreme Court, the contract is binding upon them and cannot be contradicted." This question was raised by appropriate objection on the part of the attorney for the plaintiff and is the first proposition to be decided. Counsel for the plaintiff contends that in this tribunal, which he himself has selected for the foreclosure of this mortgage, the court is without power or authority to adjudicate the equities and claims of the defendants; that the court's function is purely formal and ministerial and that the defendants, however meritorious their defenses, are estopped from setting up a defense of this character by reason of the court's lack of jurisdiction. This would not seem to be sound law. Even in the absence of statutory expression on the proposition, this court would doubtless have power to consider legal and equitable defenses interposed by defendants in any action where the plaintiff has conferred jurisdiction upon this court by selecting it as his forum.

But the Legislature has spoken definitely and positively on this proposition in section 69 of the Civil Practice Act:

" § 69. When jurisdiction of County Court co-extensive with Supreme Court. Where a County Court has jurisdiction of an action or a special proceeding, it possesses the same jurisdiction, power and authority in and over the same, and in the course of the proceedings therein, which the Supreme Court possesses in a like case; and it may render any judgment, or grant either party any relief, which the Supreme Court might render or grant in a like case, and may enforce its mandates in like manner as the Supreme Court."

The Legislature has further defined and amplified the powers of the county judge in section 74 of the Civil Practice Act:

" § 74. Power of county judge in matters before County Court. Where a County Court has jurisdiction of an action or special proceeding, the county judge possesses the same power and authority in the action or special proceeding which a justice of

53

the Supreme Court possesses in a like action or special proceeding brought in the Supreme Court."

There is no doubt that these two sections confer adequate authority upon the County Court to hear and determine defenses such as are interposed to this action. (*Bussing* v. *Whitaker*, 177 App. Div. 95; *Mead* v. *Langford*, 56 Hun, 279.)

The relief here sought is in the nature of a defense or counterclaim, after the plaintiff has selected this court for the adjudication of his rights. There can be no doubt that the Supreme Court would have jurisdiction of this defense and the Legislature has given the same power to the County Court under the sections of the Civil Practice Act above quoted. If the defendants were asserting these propositions in an action brought by them as plaintiffs, counsel's contention would undoubtedly be sound. But the reverse is true in this proceeding. (*Howard Iron Works* v. *Buffalo Elevating Co.*, 176 N. Y. 1.)

Counsel for the plaintiff raises the further question that the mortgage cannot be explained or varied by parol testimony; that conversations had prior to the execution of the agreement must be merged into the writing; that it is not proper by parol testimony to show that the writing itself does not represent the actual contract between the parties, or that it is the result of a mistake or a failure on the part of the draftsman to properly interpret and put on paper the intent of the parties. This does not seem to be the law of this jurisdiction. If it were, grave injustice in many cases would result. It is the law that the intentions of the parties in making the contract should control, even where the contract expresses a meaning different from that intention. Proof of such facts are admissible " even although they knew what words were employed and their ordinary meaning." (*Maher* v. *Hibernia Insurance Company*, 67 N. Y. 283; *Pitcher* v. *Hennessey*, 48 id. 415.)

It follows, therefore, that evidence of what the parties intended was competent on the trial of this issue.

We now come to the several contentions of the parties, as they appear in the evidence admitted on the trial.

The defendant John V. Scripter testified that about the middle of March, 1920, he met the plaintiff Gardenier at Hannibal village, and told Gardenier that he (Scripter) wanted to pay the existing contract down to $1,000, and take a deed and give a mortgage to secure the payment of the $1,000 balance on the mortgage; that he did not want to give a bond because he did not want to be personally liable for the payment of the $1,000 in case he should sell and the land went into the hands of other people. The land

in question was under contract of sale from Gardenier to Scripter and included the proposition that a bond should be given by the original grantee. This witness further testified that the plaintiff said that he thought the property was good for the debt and that he would take the mortgage without a bond and no personal liability on the part of Scripter; that thereafter they went to the attorney, Mr. Gardner, where the papers were prepared and signed. The Scripters received a deed of the premises and the plaintiff received a mortgage for $1,000. The mortgage was dated March 30, 1920, and acknowledged on April 3, 1920. In the original mortgage the word " bond " was stricken out wherever it appeared.

It further appears by the testimony of Mrs. Gardenier, the plaintiff's wife, that when the mortgage was being read over where the word " bond " appeared in one place in the mortgage, and that Scripter said there was no bond to be given, the word " bond " was thereupon stricken out.

It further appears that about November 15, 1924, the plaintiff came to defendant John V. Scripter's house in regard to the insurance on the property which had lapsed; that some conversation ensued there in which Scripter said, " I don't owe you anything," and the plaintiff replied to that saying, " I know that, but I refer to the second mortgage which you hold against the property."

It also appears from the testimony of Attorney Gardner that, as he remembers, there was to be no bond, and that the paper in question did not obligate the mortgagors personally. This would indicate that his understanding of the agreement of the parties was that there was to be no bond and no personal liability.

The plaintiff negatives this testimony, but his denial is guarded and lacking in definiteness. He fails to deny squarely the evidence of Scripter. The strongest he seems to be willing to put it is that he " doesn't remember " the conversations, *but he does not say that they did not occur*. This qualified denial runs all through his direct and cross-examinations. On cross-examination he says that he knew he was not getting a bond and that although Mr. and Mrs. Scripter and the plaintiff all lived in Hannibal, he never asked Mr. Scripter to pay the mortgage, but that he did ask him to buy it.

The character of the mortgage, the guarded testimony of the plaintiff in respect to the conversations in question, his passive attitude towards the Scripter phase of the obligation, and the whole testimony seems to constitute complete and satisfactory proof that at the time of the execution of this mortgage it had been agreed between the parties that there was to be no personal liability on the part of the Scripters and that no bond was to be given. No

Surrogate's Court, Bronx County, April, 1925.        [Vol. 124

deficiency judgment, therefore, could properly be entered against the Scripters.

It follows, therefore, that the plaintiff may have the usual judgment of foreclosure and sale, without any clause therein granting deficiency judgment against John V. Scripter and Ethol E. Scripter, with costs of foreclosure, and a separate bill of costs in favor of John V. Scripter and Ethol E. Scripter, to be paid by the referee out of the proceeds of the sale of the property.