GEORGE COHEN AGENCY, INC., Plaintiff, v DONALD S. PERLMAN AGENCY, INC., et al., Defendants and Third-Party Plaintiffs-Respondents; CONTINENTAL CASUALTY COMPANY, Third-Party Defendant-Appellant, et al., Third-Party Defendant.

Second Department, August 13, 1979

### APPEARANCES OF COUNSEL

*Rivkin, Leff & Sherman (James A. Gallagher, Jr.,* and *William M. Savino* of counsel), for appellant.

*Stroock & Stroock & Lavan (Joseph L. Forstadt* and *William J. Robbins* of counsel), for respondents.

### OPINION OF THE COURT

TITONE, J.

The primary question presented in this matter is bifurcated, namely, (1) whether the defendants, under the circumstances, may assert a third-party claim under CPLR 1007 against a third-party defendant, in excess of the sum demanded by plaintiff in the complaint; and (2) assuming such a third-party claim must be dismissed, may it be asserted in an independent action and then consolidated for trial with plaintiff's claim.

In denying appellant's motion to dismiss the third-party action herein, Special Term answered the first branch of the question in the affirmative, and concluded that therefore the second branch was rendered academic. We affirm.

The primary action in this case was brought by plaintiff George Cohen Agency, Inc. (Cohen) for recovery of $52,528 owing on promissory notes executed by defendants-respondents Donald S. Perlman Agency, Inc. and Donald S. Perlman (Perlman). The notes represented a balance due Cohen on the sale by it to Perlman of the accident and insurance portfolio it had of insurance business of the third-party defendant-appellant, Continental Casualty Company (Continental). Third-party defendant I. Edward Pogoda acted as attorney and broker in the transaction for both Cohen and Perlman.

In an answer and counterclaim Perlman alleged that Cohen, either individually, or in conspiracy with Continental and Pogoda, fraudulently induced Perlman to purchase Cohen's portfolio of Continental's insurance business. The gravamen of the fraud allegation was (a) as of the date of the sale the bulk

of the Cohen portfolio did not comply with certain regulations of the New York State Insurance Department and thus was no longer authorized for sale to the public; and (b) shortly after the Cohen-Perlman contract was executed, Continental withdrew authorization for Perlman to continue writing policies which contravened the aforesaid regulations. In the third-party complaint, Perlman claims that Continental, although aware of the Cohen-Perlman transaction, and with full knowledge of the Insurance Department's action, as well as Perlman's reliance on the value of the insurance forms it had contracted to purchase, nevertheless entered into a general agency contract with Perlman for the sale of the now worthless insurance forms. The third-party claims against Pogoda are in the nature of a malpractice action for breach of his duties as an attorney and for conspiracy in the alleged fraud with Continental and Cohen.

The damages requested by Perlman in the counterclaim and third-party claim, well in excess of the $52,528 sought by Cohen in the complaint, are as follows: $545,000 compensatory damages; $2,500,000 punitive damages; an unspecified amount of money paid to Cohen; and an amount in excess of $25,000 as and for attorney's fees. In addition, the counterclaim contains an alternate prayer for rescission or reformation of the Cohen transaction, while in the third-party complaint there are requests by Perlman for indemnity and contribution by Continental and Pogoda for any possible liability to Cohen.

Both in the affirmation supporting the motion to dismiss Perlman's third-party action and on appeal, Continental made the following contentions: (1) the excess relief requested from it by Perlman is not an appropriate subject of a third-party action; and (2) the allegations of the third-party action and counterclaim alleging fraud, if proven, would constitute a complete defense to the primary action, and would relieve Perlman from any liability to Cohen. Therefore, there is no basis for liability over against Continental.

Also, in the third issue raised in its reply affirmation at Special Term and on appeal, Continental arued that it has suffered prejudice in that, as a foreign corporation, it should be entitled to its choice of forum.

### EXCESS RELIEF

Answers and other responses to the question posed under this heading have not in the past shown a strong pattern of

consistency. Admittedly there is a line of cases dating back to the early 1950's in which third-party plaintiffs have been denied the right to seek damages in excess of those sought by the plaintiff in the main action. On the other hand, there have been strong suggestions emanating from legal commentators, recent inferences deduced from New York courts, and outright acceptance of some Federal courts, that the time has come for a change, i.e., that such relief should be permitted. One thing does seem clear—judicial economy must necessarily be our goal today in situations where such goal can be achieved without trampling upon the rights of a party to the particular litigation during the process.

In 1951 it was stated that the "impleader statute [then Civ Prac Act, § 193-a] * * * is limited to liability over, i.e., a third-party plaintiff may not assert an affirmative claim for his own damages" *(Carroll Sheet Metal Works v Mechanical Installations,* 201 Misc 689, 690). Special Term concluded in *Carroll Sheet Metal Works* that it would be improper for a third-party plaintiff to include any claims for relief beyond that prayed for by the plaintiff in the original complaint (accord *Victory Painters & Decorators v Miller,* 198 Misc 196). Likewise, where a third-party defendant added a claim for attorney's fees, the Supreme Court, Nassau County, reached the same conclusion, to wit: "The [third-party plaintiff] may not, in addition to damages recoverable by plaintiff against him, assert an affirmative claim for his own damages" *(Gleason v Sailer,* 203 Misc 227, 228).

More recently, the Appellate Division, Third Department, noted that "[t]he liability of the third-party defendant must rise from the liability of the defendant to the plaintiff" *(Horn v Ketchum,* 27 AD2d 759), thus implying that any liability of the third-party defendant which did not arise from the defendant's liability in the original complaint would be an improper subject for a third-party action.

Citing *Horn v Ketchum (supra),* the Appellate Division, Fourth Department, stated: "A claim of indemnity is not sufficiently alleged solely on the basis that the claims arose out of the same set of facts. Third-party plaintiff must also allege facts which show that third-party defendant's liability rises from the liability of third-party plaintiff to plaintiff" *(Cleveland v Farber,* 46 AD2d 733).

Moreover, in 1977, this court decided *Funt v Ruiz* (58 AD2d 801), cited by both sides as authority on this appeal. *Funt* was

a mortgage foreclosure action wherein the defendants served a third-party complaint alleging two causes of action. The first cause of action, which was allowed to stand, alleged fraud on behalf of the plaintiff and her husband, the *third-party defendant. The second, for mental anguish, asked for an additional $100,000.*

In dismissing the second cause of action this court, noting that the *ad damnum* was in excess of the amount sought by the plaintiffs from defendants, merely cited the Practice Commentaries to CPLR 1007 (McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C1007:5, p 38). Although Professor McLaughlin in the commentary did cite as authority the earlier cases discussed above, he also observed: "What little law there is on the question is in the negative, although the cases are not closely reasoned." Furthermore, in his Supplemental Practice Commentaries (1978) to the same section, McLaughlin notes that the *Funt* decision "is not without difficulty."

Before approaching the arguments of the commentators and other authorities on the feasibility of a third-party complaint for judgment in excess of the *ad damnum* set forth in the plaintiff's complaint, further analysis of the *Funt* case and its relationship to the case at bar is required.

The first cause of action alleging fraud was sustained in *Funt.* Although the third-party plaintiffs did not seek excess judgment in that cause, the court sustained it with the following reasoning (58 AD2d, at p 802): "The third-party complaint's first cause of action will not unduly delay trial of the main action as the same factual issues are presented therein as are presented in the defense. The first cause of action of the third-party complaint and the second and third defenses set forth in the answer contain substantially the same allegations. These issues would be tried in the main action even if the third-party action were severed."

The second cause of action alleging mental anguish was dismissed without prejudice. Without going into the merits as to whether its dismissal was based on the fact that damages in excess of those sought by plaintiff were requested therein, clearly such cause of action would place an impermissible burden on the litigation involved under the complaint and the third-party plaintiff's first cause of action.

In the case at bar, the allegations as to Continental in the third-party complaint largely mirror the allegations found in

the defendant's answer and counterclaim. Thus, as respondents point out, "these third-party causes of action combine features of both the undismissed and the dismissed third-party causes of action in the *Funt* case." Although third-party plaintiff's claim is for an amount greater than the amount claimed by the plaintiff, the issues to be decided in the third-party action are essentially the same as in the main cause and would have to be tried in any event.

Without a doubt rules of pleading have been liberalized in New York in recent years, and this is noticeably true with respect to the rules for third-party actions *(Wilson v New York State Elec. & Gas Corp.,* 23 AD2d 915; *Braun v City of New York,* 17 AD2d 264; *Taft v Shaffer Trucking,* 52 AD2d 255).* According to Professor David Siegel (Siegel, New York Practice, § 157, p 201): "The impleader claim need not be for the same cause of action as the main claim or rest on the same ground or theory, as was once thought to be required. The main claim, for example, may be in tort and the claim over in contract, or vice-versa." (See, also, *Norman Co. v County of Nassau,* 63 Misc 2d 965.)

In the case at bar, the main claim is in contract and the claim over is in tort. As to whether an excess claim may be the subject of a third-party action, Siegel states (Siegel, New York Practice, § 164, p 206): "There is some doubt about whether D, having impleaded X, may assert against X yet other claims, unrelated to P's claim. Unrelated claims were not allowed under prior law, but CPLR 601 allows broad joinder of claims 'when there are multiple parties' and that language would seem to cover."

CPLR 1010 gives the court the discretion to sever or dismiss a third-party claim. It thus acts as a stopgap to CPLR 1007 whereby the court can protect the "substantial rights" of any party who may be burdened by the third-party claim. Since New York has such a rule, it has been suggested that it should be proper to hear unrelated third-party claims, as the court may sever if the matter becomes too unwieldy (2 Weinstein-Korn-Miller, NY Civ Prac, par 1007.06, pp 10-122—10-123): "Interjection of entirely new questions of law and fact in the third-party claim, while not a basis for automatic dismissal, may be considered by the court in exercising its discretion under CPLR 1010." And quoting from Developments in the Law—Multiparty Litigation in the Federal Courts (71 Harv L Rev 874, 909), Weinstein-Korn-Miller states

(2 Weinstein-Korn-Miller, par 1007.05, p 10-121): "In most cases, impleader has been considered proper whenever the defendant would acquire a right of action against or a right to an increased amount of recovery from the third-party defendant based upon the defendant's liability to the plaintiff in the original action. Once it has been determined that a claim falls within this definition, the court should examine the facts of the particular case in deciding whether in its discretion to grant or deny impleader."

The New York Court of Appeals has likewise recognized the value of impleader and has brought to the forefront the relationship of CPLR 1007 and 1010 (*Krause v American Guar. & Liab. Ins. Co.,* 22 NY2d 147). Although *Krause* did not deal with an excess liability situation, it did permit a third-party claim based on a contingent right to subrogation. The court stated (p 153): "Nor can it be denied that to permit impleader is in full accord with the spirit of an advanced practice code which seeks 'the avoidance of multiplicity and circuity of action, and the determination of the primary liability as well as the ultimate liability in one proceeding, whenever convenient' * * * Severances, separate trials and stays can be employed to avoid any possible prejudice".

Our State's highest court also noted in *Krause* (p 155) that "whatever additional expense to the plaintiff there may be is more than balanced by the advantages of judicial efficiency".

Federal courts have been faced squarely with the issue of whether third-party plaintiffs may claim damages greater than those sought under the original complaint. Although not all are in accord, it has been held in the District Court for the Southern District of New York that: "It is likewise no obstacle that affirmative relief is sought against the proposed third-party defendants above the amount claimed by [the plaintiff] * * * [A]ssuming the third-party complaint to be otherwise proper, additional claims against third-party defendants are permissible" (*Crompton-Richmond Co. v United States,* 273 F Supp 219, 221; accord *Noland Co. v Graver Tank & Mfg. Co.,* 301 F2d 43).

It must also be noted that nowhere in CPLR 1007 is there specific language prohibiting a claim by a defendant against a third party for an amount over and above that sought by the plaintiff against him. While CPLR 1007 does state in relevant part that "a defendant may proceed against a person not a party who is or may be liable to him for *all* or part of the

plaintiff's claim against him" (emphasis supplied), nowhere in such clause is there language limiting the amount defendant may receive in indemnification to the maximum amount sought by the plaintiff from defendant.

Thus I am of the opinion that the third-party claim of defendants Perlman should be sustained and that portion of this court's ruling to the contrary in *Funt v Ruiz* (58 AD2d 801, *supra)* expressly overruled. Although this determination is at variance with our earlier decisions in this area, today's requirements of judicial efficiency dictate a need for such a procedure and does not do violence to statutory language employed in CPLR 1007. As stated in *Mallis v Kates* (56 AD2d 818), where "the transactions involved * * * are so interwoven * * * [o]n the whole, it seems wiser, and in the long run more economical, to have one trial at which all the rights of all the parties arising out of these interrelated transactions can be adjudicated." Moreover, with the power and the constraints set forth in CPLR 602 and 1010, which, collectively, confer upon the trial court discretion to sever, dismiss, or consolidate third-party claims when appropriate, the delicate balancing of judicial efficiency and the rights and convenience of litigants, discussed above, may be successfully accomplished.

### ALLEGATIONS OF FRAUD IN THIRD-PARTY COMPLAINT AGAINST PLAINTIFF AS PRECLUDING LIABILITY OVER AGAINST THIRD-PARTY DEFENDANT

In its second point, Continental argues that the third-party complaint must be dismissed because it alleges facts which, if proved, would be a complete defense to the main action between Cohen and Perlman (see *Scivetti v Niagara Mohawk Power Corp.,* 33 AD2d 884). However, as respondents point out, the third-party complaint contains allegations in the alternative, some of which would not negate Perlman's liability to Cohen. For example, it is also alleged in such pleading that Continental, acting alone, fraudulently concealed information from Perlman. Thus, if Perlman proves only this allegation without a showing of any conspiracy, Perlman's obligation to Cohen would not be negated. Instead the liability for such obligation would be transferred to Continental as a result of its conduct.

In any event, recent commentary has criticized the notion that a third-party complaint must be dismissed merely

because proof of its allegations would negate the main claim. Such notion is based on the antiquated theory that third-party practice only lies for a formal, substantive indemnity claim. Realistically, it is the logical relationship of the claims which should determine whether third-party practice is appropriate, not the mechanistic approach of the past. As Professor Siegel graphically stated in his treatise New York Practice (§ 158, p 201):

"If D's [third-party plaintiff's] impleader complaint against X [third-party defendant] pleads a state of facts which, if proved, would relieve D of all liability to P [plaintiff], it has been held that impleader does not lie and the impleader complaint must be dismissed * * *

"[However,] impleader by D should be sustainable today even if there is a possibility that the fault will be found to belong entirely to X, and this would relieve D of liability altogether.

"In other words, the fact that the two claims may prove mutually exclusive need not ipso facto preclude impleader. The logical relationship of the claims should determine, and the capacity of the one to negate the other is itself a factor establishing such a relationship."

### CHOICE OF FORUM

Although not raised initially on appeal, in its reply affirmation on the motion to dismiss the third-party complaint, Continental raised the question of prejudice in that, as a foreign corporation, it should be entitled under the United States Constitution and Federal statutes, to its choice of forum. On oral argument of the appeal this court granted Continental leave to file a supplemental or reply brief on this issue. Such brief has been filed by Continental.

In its belated contention on appeal that it was denied a choice of forum, Continental claims that because of its status as a third-party defendant, it is precluded from seeking removal to the Federal courts; whereas, had the third-party plaintiff, Perlman, brought a separate suit against Continental, it would have been able to seek removal.

Respondents note in their brief that their claim was not solely against Continental, but that it had related claims to assert against Cohen and Pogoda as well. In its reply brief, Continental now responds to this with a showing that Perl-

man did include a claim against Continental alone. Continental cites subdivision (c) of section 1441 of title 28 of the United States Code, the removal statute, and claims that the count against Continental alone qualifies as a "separate and independent claim" suitable for removal to the Federal courts, with or without the balance of the claims, at the discretion of the United States District Court. That section reads: "Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction." Research of the applicable Federal law under this statute indicates that even if Perlman's claim was asserted against Continental, Cohen and Pogoda as an independent suit, Continental would still not be permitted to remove the action to the Federal courts.

At the outset, it should be noted that removal statutes have always been strictly construed against allowing removal to the Federal courts (*Holloway v Gamble-Skogmo, Inc.,* 274 F Supp 321, 322). Thus, all doubt should always be resolved in favor of nonremoval (*Douglass v Park City Assoc.,* 331 F Supp 823, 824). In 1948, the removal statute was amended to its present form (US Code, tit 28, § 1441, subd [c]). By reason of this amendment, the statute "no longer permits * * * removal by reason of a separable controversy between citizens of different States unless the controversy also constitutes a separate and independent claim or cause of action. In this respect removal from State courts was clearly limited" (*Port of New York Auth. v Eastern Air Lines,* 259 F Supp 142, 144).

In a landmark decision, the Supreme Court of the United States, in 1951, defined the term "separate and independent" as it related to removal. In *American Fire & Cas. Co. v Finn* (341 US 6), a single plaintiff sued three defendants in State court seeking recovery for a fire loss. The plaintiff alleged that one of the three was liable, but was uncertain as to which. The United States Court of Appeals had upheld removal to the District Court. The Supreme Court reversed (pp 13-14): "Considering the previous history of 'separable controversy,' the broad meaning of 'cause of action,' and the congressional purpose in the revision resulting in 28 U.S.C. § 1441 (c), we conclude that *where there is a single wrong to plaintiff, for*

*which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim* or cause of action under § 1441 (c)" (emphasis added). (Accord *City of New York v New York Jets Football Club,* 429 F Supp 987; *Schwartz v Merrill Lynch, Pierce, Fenner & Smith,* 424 F Supp 672.)

The events which led to Perlman's claim against Continental, Cohen and Pogoda are certainly "an interlocked series of transactions" within the meaning of *Finn.*

Furthermore, the fact that Perlman asserted his claim against Continental, Cohen and Pogoda in separate causes of action is of no consequence. As the District Court stated in *Bond v Doig* (433 F Supp 243, 247), "removability * * * cannot rationally be made to depend on the accident of who sues first, or on the niceties of state pleading and practice." The court in *Bond* continued (p 247): "It matters not whether the joined claim or cause which is removable is a claim by the fourth plaintiff against defendant on the sixth count of the initial complaint, or the claim of a defendant against a third-party defendant not previously in the case. If it is a separate and independent claim or cause, removable if sued on alone, then the whole case is removable even though it be joined with others not otherwise removable." And, of course, if it is not a separate and independent claim or cause of action, it cannot be removed. To this effect was the decision of the Sixth Circuit Court of Appeals in *Union Planters Nat. Bank of Memphis v CBS, Inc.* (557 F2d 84, 89), wherein it was stated: "[W]here a plaintiff seeks to recover for a single injury arising from a series of interrelated events, and whether he sues several defendants jointly, severally, jointly and severally, or alternately, he is not asserting separate and independent claims under 1441 (c)." (Accord *Lance Int. v Aetna Cas. & Sur. Co.,* 264 F Supp 349.)

Thus, it is clear that Continental would be estopped from removing the case to Federal court even if the third-party action were dismissed by this court and leave were given to Perlman to assert a separate suit against the third-party defendants. And should this court agree that the third-party complaint was proper in this case, it is evident that Continental has no grounds for asserting prejudice against it: "Under even the most liberal rules of third party practice, parties are not properly joined unless there is some question of law or fact common to all of them, and some claim asserted for or

against all arising out of a single transaction or occurrence or series of related transactions or occurrences. Third-party complaints are not separate and independent of plaintiff's complaint, but are in whole or in part dependent thereon" *(Holloway v Gamble-Skogmo, Inc.,* 274 F Supp 321, 322, *supra).*

Thus a reading of the Federal decisions on the question of removal indicates that Perlman's claim against Continental would not be subject to removal in any event, due to the interrelated claims against Cohen and Pogoda. Therefore, Continental's claim of prejudice is without merit.

### CONCLUSION

Since this court has decided to follow the modern trend of thought and hold that under the circumstances, the third-party action herein may be maintained even though damages are sought thereunder in excess of plaintiff's claim, the question as to whether the third-party action should be treated as an independent complaint and possibly be consolidated with the main action, becomes academic. Accordingly, the order of Special Term should be affirmed insofar as appealed from, with costs.

HOPKINS, J. P., MARGETT and MANGANO, JJ., concur.

Order of the Supreme Court, Kings County, dated August 23, 1978, affirmed insofar as appealed from, with $50 costs and disbursements.